IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Hicks Properties, LLC, | Case No. 1:09-cv-21 |
| Plaintiff, | Chief Judge Susan J. Dlott |
| v. | ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS |
| Cincinnati Metropolitan Housing Authority, *et al.*, | |
| Defendants. | |

This matter comes before the Court on Defendants' Motion for Judgment on the Pleadings (doc. 21). Defendants move for judgment pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on two claims stated in Plaintiff's Verified Complaint (doc. 1), both arising from the federal Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. §§ 1961, *et seq.* For the reasons that follow, the Court GRANTS the Motion for Judgment and declines to exercise supplemental jurisdiction over the remaining state law claims.

## I. COMPLAINT ALLEGATIONS

The Court summarizes herein the relevant factual allegations stated in the Verified Complaint. Plaintiff Hicks Properties LLC is an Ohio limited liability company which owns rental properties in Hamilton County, Ohio. Defendant Cincinnati Metropolitan Housing Authority ("CMHA") is an agency which is federally funded and mandated to participate in the Section 8, Housing Choice Voucher Program. Defendants Donald G. Driehaus, Arnold R. Barnett, Lamont Taylor, Peter G. Witte, Lacretia Carter, Debra Forte-Muhammad, Russell S. Rust IV, and Lisa Isham (collectively "Individual Defendants") are directors or managers for CMHA. Hicks Properties contracted with CMHA to provide Section 8 rental housing to CMHA

1

clients with monies provided by the federal government and administered by Defendants. Hicks Properties alleges generally that Defendants conspired and enacted a plan or scheme to deprive it of the value of its rental properties.

Specifically, Hicks Properties alleges that in early 2008, a woman named Ms. Crutchfield reported to Defendants that Hicks Properties had responded to her request for repairs, but that the repair work did not meet her expectations. Subsequent repairs were made for Ms. Crutchfield that were satisfactory. Defendants did not inquire to Hicks Properties about its response to Ms. Crutchfield's complaint or to seek verification of the record of repairs. Instead, Defendants surveyed the tenants of Hicks Properties to see if other renters had complaints about the landlord's response to repair requests and maintenance issues. Hicks Properties alleges that Defendants' solicitation of tenant complaints violated Section 8 housing policies stated in 24 C.F.R. §§ 792.101 through 792.204 and 24 C.F.R. § 982.54.[1] Hicks Properties received a high volume of requests for repairs in response to the solicitation by Defendants. Hicks Properties was unable to timely respond to all the requests for repairs due to the high volume and requested an extension of time from Defendants to respond. Defendants denied the extension of time request.

On March 19, 2008, Defendants suspended Hicks Properties from the Section 8 program for deficient property management performance. The notice of suspension stated that Hicks Properties had a pattern of deficient property management, engaged in a pattern of abusive conduct towards tenants, and failed to adequately maintain its properties. The notice of suspension was not independently verified as allegedly required by Section 8 regulations. Hicks

---

[1] The Court need not accept allegations as true to the extent they call for a legal conclusion.

Properties alleges that its suspension violated Section 8 housing regulations at 24 C.F.R. § 982.306.

Hicks Properties filed a Verified Complaint against CMHA and Individual Defendants on January 12, 2009. Hicks Properties asserts claims for violations of RICO and multiple state law torts. It seeks damages and injunctive relief. Defendants filed Answers (docs. 2, 20) denying liability. Defendants now move for judgment on the pleadings as to the RICO claims.

## II. LEGAL STANDARDS GOVERNING RULE 12(c) MOTIONS

Defendants move pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings. The standard for adjudicating a Rule 12(c) motion is the same as that for adjudicating Rule 12(b)(6) motion. *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007). A district court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997). However, this tenant is inapplicable to legal conclusions, or legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009).

The Supreme Court has explained "an accepted pleading standard" that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). To withstand the dismissal motion, the complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Court does not require "heightened fact pleading of specifics, but only enough to state a claim for relief that is plausible on its face." *Id.* at 570. "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.

## III. ANALYSIS

Defendants move for judgment on the RICO claims stated against both CMHA and Individual Defendants.

### A. RICO Claims Against CMHA

A RICO claim cannot be established against a municipality because a municipality cannot form the specific intent necessary to establish a RICO claim. *Call v. Watts*, No. 97-5406, 1998 WL 165131, at *2 (6th Cir. Apr. 2, 1998) (stating that counties cannot form the requisite *mens rea*); *McGee v. City of Warrensville Hts.*, 16 F. Supp. 2d 837, 848 (N.D. Ohio 1998) (stating that "a municipality is incapable of forming the specific intent associated with the underlying predicate acts of fraud"). Hicks Properties now has conceded this legal proposition and does not contest dismissal of the RICO claim against CMHA. (Doc. 22 at 5.) The RICO claims against CMHA, accordingly, will be dismissed.

### B. RICO Claims Against Individual Defendants

Individual Defendants also move for judgment on two bases. First, they assert that Hicks Properties pleaded only official capacity claims against them and that those claims fail on the same basis that the claims against CHMA failed. Second, Individual Defendants assert that they are entitled to qualified immunity if Hicks Properties intended to state claims against them in their individual capacities.

The Court will examine the official capacity argument first. A suit against an individual

in his or her official capacity generally is treated as a suit against the public entity of which the individual is an officer or agent. *Ky. v. Graham*, 473 U.S. 159, 165-66 (1985). An award of damages against an individual in his official capacity must be satisfied by the government entity, while an award against an individual in his or her personal capacity must be satisfied by the individual's personal funds. *Id.*

The Sixth Circuit has instructed that if a plaintiff intends to sue a government official in his or her individual capacity, the plaintiff should so specify in the complaint to provide notice of the possibility of personal liability. *Wells v. Brown*, 891 F.2d 591, 593-94 (6th Cir. 1989). The failure to identify in a complaint that a suit is intended as a personal capacity suit is not fatal to the claim against the individual, however, if the individual otherwise receives notice during the "course of proceedings" that he or she is being sued in their personal capacity. *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001). Accordingly, in the Sixth Circuit, "[w]hen a 1983 plaintiff fails to affirmatively plead capacity in the complaint, we then look to the course of proceedings to determine whether *Wells*'s first concern about notice has been satisfied." *Id.* at 773. Under the course of proceedings test, courts "consider the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims for qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability." *Shepherd v. Wellman*, 313 F.3d 963, 968 (6th Cir. 2002).

In this case, Hicks Properties does not allege in the Verified Complaint whether Individual Defendants are sued in their official capacities, individual capacities, or both. Hicks Properties identifies Individual Defendants by stating their positions at CMHA and by providing

5

their business addresses only.  Moreover, Hicks Properties does not specify the actions taken by Individual Defendants for which they are being sued with the exception of one specific factual allegation stated against Defendant Debra Forte-Muhammad.  These factors are indicative of official capacity claims.

On the other hand, different factors suggest that Hicks Properties has stated individual capacity claims.  Hicks Properties seeks compensatory and punitive damages against Defendants, jointly and severally.  *See Shepherd*, 313 F.3d at 969 (finding a prayer for damages indicative of an intent to impose individual liability); *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995) (same).  In response, Individual Defendants assert the defense of qualified immunity in their Answers, suggesting an awareness of the potential for individual liability.  *See Shepherd*, 313 F.3d at 968; *Moore*, 272 F.3d at 772 n.1.  Finally, Hicks Properties' states explicitly in its response to the pending motion that it intended to sue Individual Defendants in their individual capacities.  *See Abdur-Rahman v. Mich. Dept. of Corrections*, 65 F.3d 489, 491 (6th Cir. 1995) (finding intent to impose individual liability demonstrated by plaintiff's response to a summary judgment motion).  The Court finds based on the course of proceedings that Individual Defendants have sufficient notice that they are being sued in their individual capacities.

The Court must determine, therefore, whether Individual Defendants are entitled to qualified immunity.  The doctrine of qualified immunity provides "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity provides immunity from suit, not simply a defense to liability.  *Pearson v.*

*Callahan*, 129 S.Ct. 808, 815 (2009). Immunity questions are to be resolved at the earliest possible stage in a litigation. *Id.* The Sixth Circuit has held that qualified immunity can attach to shield government officials from suit on civil RICO claims. *See Cullinan v. Abramson*, 128 F.3d 301, 309-12 (6th Cir. 1997).

The Supreme Court recently in *Pearson* issued new guidance regarding how to determine if qualified immunity attaches. Prior to *Pearson*, district courts were required to follow the two-part test articulated in *Saucier v. Katz*, 533 U.S. 194 (2001), in sequential order. The *Saucier* test required district courts first to ask if the facts alleged established that the government official's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201; *see also Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008). This inquiry was "undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. If no constitutional violation existed, then there was no need under *Saucier* to inquire further about qualified immunity. *Id.* If there was a constitutional violation, then district courts asked if the specific rights violated were clearly established. *Id.* at 201-02; *see also Parsons*, 533 F.3d at 500. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202 (citation omitted)..

The Supreme Court recognized in *Pearson* that the rigid sequential-order *Saucier* test had been criticized by lower courts and by Supreme Court Justices. 129 S.Ct. at 815, 817 (compiling cases). The Court held in *Pearson* that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." *Id.* at 818. Courts now are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at

hand." *Id.*

District courts in this Circuit generally look to only Supreme Court decisions, Sixth Circuit decisions, and their own decisions to determine whether a right is clearly established for purposes of the qualified immunity analysis. *Cullinan*, 128 F.3d at 311; *Walton v. Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993). The rights "not to be deprived of property without due process and not to be victimized by patterns of racketeering activity" are clearly established. *Cullinan*, 128 F.3d at 309; *see also Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (stating due process right is established). However, the violation of a broadly stated general right is not determinative. *Anderson*, 483 U.S. at 639; *Cullinan*, 128 F.3d at 309-10. The contours of the right must be "more particularized" and "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. Though the specific actions themselves need not have been found unlawful, the unlawfulness of the actions must be apparent in light of pre-existing law. *Id.*

Hicks Properties alleges that Individual Defendants unlawfully infringed upon its property rights without due process. It alleges that CMHA's investigation of its practices and subsequent suspension from the Section 8 program amounted to an unconstitutional taking. Specifically, Hicks Properties alleges that the investigation violated the Program Integrity Addendum under 24 C.F.R. §§ 7921.101 through 792.204 and 24 C.F.R. § 982.54. Hicks Properties then concludes as follows:

> Qualified immunity cannot shield defendants from such a taking particularly since the process deprived Hicks' of its right to protect its leasehold interest. The allegations support Hicks' claims that the defendants violated his due process rights in taking his interest in the lease agreement it had with its' [*sic*] Section 8 tenants.

8

(Doc. 22 at 11.)

These arguments by Hicks Properties are insufficient. To begin, it has not stated separate claims for unlawful taking or violation of due process. Hicks Properties does not provide any legal authority for the implied proposition that the taking of property without due process in the manner alleged would constitute a violation of RICO. Moreover, it does not identify any controlling Supreme Court, Sixth Circuit, or Southern District of Ohio case holding that the conduct of CMHA or Individual Defendants, in the particularized context, violates a clearly established right. The Court is not aware of any controlling authority holding that a government official's decision to suspend a landlord from a Section 8 housing program in violation of certain administrative regulations violates clearly established rights set forth in the RICO statute. Accordingly, the Court holds that Individual Defendants are entitled to qualified immunity.[2]

---

[2] The Court expresses no opinion on the first *Saucier* test prong of whether Individual Defendants' conduct violated RICO or a constitutional right.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings (doc. 21) is **GRANTED** as to the RICO claims. Subject matter jurisdiction in this action appears to have been based solely on the presence of the federal question presented by the RICO claims. Pursuant to 28 U.S.C. § 1367(c)(3), this Court now declines to exercise supplemental jurisdiction over the remaining state law claims. The state law claims are dismissed without prejudice.

IT IS SO ORDERED.

    ___s/Susan J. Dlott_____
    Chief Judge Susan J. Dlott
    United States District Court